**QUALCOMM INCORPORATED, Defendant Below, Appellant,**

v.

**TEXAS INSTRUMENTS INCORPORATED, Plaintiff Below, Appellee.**

No. 474, 2004.

Supreme Court of Delaware.

Submitted: April 20, 2005.
Decided: May 25, 2005.
Revised: June 8, 2005.

Thomas C. Grimm, Jon E. Abramczyk (argued), Rodger D. Smith, II, Susan Wood Waesco and James W. Parrett, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Appellant.

Jesse A. Finkelstein, and Jeffrey L. Moyer, of Richards, Layton & Finger, Wilmington, DE; Terence M. Murphy (argued), Joseph L. McEntee and Thomas R. Jackson, of Jones, Day, Dallas, TX and Christian G. Vergonis, of Jones, Day, Washington, DC, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider: (i) whether the confidentiality provision in a Patent Portfolio Agreement (PPA) between QUALCOMM Incorporated and Texas Instruments Incorporated (TI) is a material term of that agreement; and (ii) whether TI breached the PPA's covenant not to sue. The Court of Chancery held that, as a matter of New York law, the confidentiality provision is not material because the "root" of the PPA is patent peace, not confidentiality. Thus, although TI violated the confidentiality provision, QUALCOMM could not terminate the PPA. The Court of Chancery also held that TI did not breach the covenant not to sue because its lawsuit was not based on a preexisting agreement between QUALCOMM and a third party. We agree and affirm.

Factual and Procedural Background

QUALCOMM designs and manufactures communication products based on a form of digital wireless technology called Code Division Multiple Access (CDMA). The company holds numerous patents related to CDMA technology and licenses its technology to cell phone companies and others in the wireless industry. QUALCOMM's licensing program generates royalties from both the manufacturers of CDMA integrated circuits and the manufacturers of hand sets that use CDMA integrated circuits. To protect its stream of royalties from the hand set manufacturers, QUALCOMM's licenses with integrated circuit manufacturers deny the licensees any so-called "pass-through rights" that would otherwise relieve the hand set manufacturers of their obligation to pay CDMA royalties to QUALCOMM.

TI manufactures application-specific integrated circuits for hand sets using CDMA and a competing wireless technology called GSM. TI, like QUALCOMM, holds numerous patents relating to digital wireless technology. TI was interested in entering into an agreement with QUALCOMM that would allow both companies to use each others' patent portfolios. The resulting PPA, executed in December 2000, recites

· [REDACTED]

The PPA also provides, among other things, that: i) TI is entitled to "most favored nation"(MFN) status,

[REDACTED]

ii) except in circumstances not relevant here, TI may not sue QUALCOMM over a pass-through rights agreement between QUALCOMM and a third party if that agreement was in existence at the time the PPA was executed; iii) the parties are required to keep the terms of their agreement confidential; and iv) if either party materially breaches the PPA, the other party may terminate the agreement, and still retain the use of the breaching party's patents.

In May 2003, TI disclosed the PPA's royalty terms to investment analysts at a TI conference. In July 2003, QUALCOMM filed suit in the Superior Court, alleging that TI's disclosure to the analysts breached the PPA, and seeking a determination that the breach was material. TI responded by filing suit against QUALCOMM in the Court of Chancery, alleging that QUALCOMM breached the MFN provision. The two lawsuits were effectively combined when QUALCOMM dismissed its Superior Court action and filed a counterclaim in the Court of Chancery action.

After discovery, the parties moved for summary judgment as to various aspects of their claims. The trial court held that: (i) TI breached the PPA by disclosing the royalty terms; (ii) as a matter of New York law, that breach was not material; and (iii) QUALCOMM did not breach the MFN provision. The Court of Chancery

conducted a trial on QUALCOMM's remaining claim—that, by suing QUALCOMM over the MFN provision, TI breached the litigation rights provision of the PPA. After the trial, that Court concluded that TI did not breach that provision because the suit did not relate to an agreement between QUALCOMM and a third party. This appeal followed.

## Discussion

### I. Materiality of the Confidentiality Provision

■ Under New York law, which governs the PPA, a breach is material if it is "so substantial that it defeats the object of the parties in making the contract."[1] Stated differently, the breach must "go to the root of the agreement between the parties."[2] In deciding whether a breach is material, New York courts consider the following factors identified in the Restatement (Second) of Contracts:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[3]

1. *Frank Felix Assoc., Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997).

2. *Id.* (Citations and internal quotations omitted.)

3. Restatement (Second) of Contracts, § 241; *Frank Felix,* 111 F.3d at 289.

■ We are satisfied that the Court of Chancery correctly concluded that the confidentiality provision was not material to the PPA. As the trial court noted, "[t]he 'root of the agreement' or the 'essence of the contract' was patent peace between Qualcomm and TI. The agreement itself makes this abundantly clear." Moreover, if the Court of Chancery had evaluated all of the Restatement factors expressly, the result would have been the same:

(a) QUALCOMM conceded that, despite TI's breach: (i) QUALCOMM continues to sell, distribute and license its products without being subjected to patent infringement litigation from TI; and (ii) QUALCOMM continues to receive royalties from hand set manufacturers with no pass-through. Thus, the breach did not deprive QUALCOMM of the benefit it expected from the PPA.

(b) QUALCOMM claims that it suffered a $30 million loss because another company withdrew from negotiations over a licensing agreement after learning the royalty terms of the PPA. Assuming that TI's May 2003 disclosure was the reason for the breakdown in negotiations, QUALCOMM would have been able to recover damages from TI caused by the disclosure. QUALCOMM decided to forego its damage remedy, however, because (it says) a trial court discovery ruling would have forced it to reveal the confidential terms of all of its licensing agreements—a result that would be even more damaging than TI's wrongful conduct. But QUALCOMM never sought review of the trial court's discovery ruling. Instead, it simply dismissed its damages claim shortly before the scheduled trial. Thus, on this record, it appears that QUALCOMM could have been adequately compensated for the one transaction that TI's breach allegedly derailed.

(c) The third Restatement factor is the extent to which the breaching party would suffer a forfeiture. QUALCOMM acknowledges that TI would suffer a forfeiture because, if the breach were material, QUALCOMM could continue to use TI's patents, but TI would lose its right to use QUALCOMM's patents. Although it criticizes the trial court for failing to use the Restatement's factors to determine materiality, QUALCOMM asks this Court to ignore this factor, because the forfeiture was part of the parties' bargain. That argument misconceives the issue, however, which is not whether the termination provision is enforceable, but whether a breach of the confidentiality provision is material. Where, as here, a finding of materiality would result in a forfeiture, the Restatement counsels that the breach is "less likely to be regarded as material." [4]

(d) The fourth factor is TI's ability to cure its breach. The confidential information was disclosed, and that disclosure cannot be undone. TI has attempted to minimize the impact of its disclosure, however. Its employees were instructed not to make such disclosures in the future, and TI removed the information from its website. Moreover, and as the Comment to the Restatement explains, the "likelihood of cure" factor relates to the parties' expectation of performance under the contract. The record establishes that the parties are continuing to perform under their cross-license agreement. Thus, this factor does not support a finding of materiality.

(e) QUALCOMM focuses attention on the final factor, arguing that the willfulness of TI's conduct lowers the standard for materiality and thereby undermines the trial court's conclusion. QUALCOMM describes TI's conduct as "malicious" and "a calculated attempt to gain an economic

---

4. Restatement (Second) of Contracts, § 241, Comment d.

advantage at QUALCOMM's expense." The fact that TI's disclosure was intentional and motivated by self-interest does not make it material, however. At most, "the severity of [the] rule [requiring that the breach destroy the object of the contract] is somewhat relaxed where the default is deliberate." [5] Since the record establishes that both parties are continuing to perform under the PPA and to reap the benefits of their cross-licensing agreement, the disclosure does not meet even a "somewhat relaxed" standard of materiality.

Finally, we note QUALCOMM's argument that summary judgment was not appropriate because there are disputed issues of fact relating to the materiality claim. In denying TI's motion to dismiss, the trial court did recognize the possibility that, notwithstanding the apparent purpose of the PPA, QUALCOMM might present evidence to show that TI's breach of confidentiality was material. But, after full discovery, the trial court concluded:

> I granted Qualcomm the opportunity to muster evidence to support its claim that TI's breach was material. Qualcomm has failed in this effort. . . .
>
> The PPA was the mechanism by which the parties intended to share their respective patent portfolios [REDACTED] without fear of litigation, [REDACTED] In other words, the PPA was an agreement [REDACTED] respective intellectual property rights [REDACTED] The PPA is not a confidentiality agreement. Nor was confidentiality identified by the parties as a critical term or goal of the PPA.
>
> \* \* \*
>
> . . . I have no doubt that Qualcomm believes the PPA's confidentiality provi-

sion was important, but as '[i]mportant as the preservation of confidentiality might have been . . ., there is no doubt that it was ancillary to the principal objective' [6] of the PPA, namely, patent peace.

Based on our review of the record, we agree that there are no material issues of fact in dispute and that TI was properly found entitled to judgment as a matter of law.

## II. Covenant Not to Sue.

■ Article 8.3(b) of the PPA, the "litigation rights provision," states in relevant part:

### [REDACTED]

In its Amended Complaint, TI sought declaratory and injunctive relief, alleging that QUALCOMM was violating the MFN provision of the PPA. Specifically, the complaint alleged that QUALCOMM had granted more favorable pass-through rights to its own integrated circuit business than to TI by allowing hand set manufacturers who purchased their circuits from QUALCOMM to pay a reduced royalty on their hand sets. QUALCOMM successfully defended against this claim. QUALCOMM also filed a counterclaim, alleging that TI's lawsuit violated Article 8.3(b) of the PPA. After a trial on the counterclaim, the Court of Chancery held that TI had not violated the litigation rights provision, because TI "did not sue on a preexisting agreement between QUALCOMM and a third party."

QUALCOMM argues that the trial court misinterpreted the litigation rights provision. It argues that, whether or not TI actually was suing on a preexisting agree-

---

5. *McGuire v. Rudy's Rail, Inc.,* 73 N.Y.S.2d 72, 75 (N.Y.Sup.Ct.1947) (Quotations omitted.).

6. *In re Ivan Boesky Sec. Litig.,* 825 F.Supp. 623, 636 (S.D.N.Y.1993), *aff'd,* 36 F.3d 255 (2d Cir.1994).

ment with a third party, the critical question was whether TI *claimed* to be suing on such an agreement. We disagree. The litigation rights provision, by its terms, applies only to preexisting agreements between QUALCOMM and third parties. The trial court held that QUALCOMM's integrated circuit business was not a third party. That holding, which neither side disputes, makes the litigation rights provision inapplicable.

### Conclusion

Based on the foregoing, the judgments of the Court of Chancery are affirmed.