**IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY**

ROBERT A. WERN              )

                         )

        Plaintiff         )

     v.                   )     C.A. No. CPU6-23-000268

                         )

POOLS & SPAS UNLIMITED    )

OF MILFORD, INC.            )

                         )

                         )

        Defendant     )

Submitted: November 18, 2024
Decided: February 27, 2025

Robert A. Wern
104 Marsh Ridge Court
Rehoboth Beach, DE 19971
*Pro Se*

Victoria K. Petrone, Esq.
2711 Centerville Road, Suite 401
Wilmington, DE 19808
*Attorney for Defendant*

## DECISION AFTER TRIAL

Robert A. Wern ("Plaintiff") filed a breach of contract action against Pools and Spas Unlimited of Milford, Inc. ("Defendant") for failing to install a pool at his residence seeking damages in the amount of $57,208. The Court held Plaintiff failed to meet his burden by a preponderance of the evidence Defendant breached the contract to install an in-ground pool on Plaintiff's property.

**MIMS, J.**

The Court heard testimony from the following witnesses on behalf of both parties: Mark Henderson, Bob James, and Mandi Hughes. Plaintiff testified on his own behalf and entered documents into evidence without objection.[1] Defendant entered documents into evidence without objection.[2]

## PROCEDURAL HISTORY

On March 20, 2023, Plaintiff filed a breach of contract claim against Mark Henderson ("Henderson"), owner of Defendant, and Bob James ("James"), operations manager of Defendant.[3] Plaintiff asserted on June 18, 2021, he and Defendants entered into an agreement on a plan design for a pool installation project at Plaintiff's residence located at 104 Marsh Ridge Court, Rehoboth Beach, DE 19971.[4] Plaintiff paid Defendants a $18,060 deposit for the in-ground swimming pool.[5] Plaintiff contends Defendants failed to provide a fully-executed copy of the pool construction contract following the payment of the deposit.[6] Plaintiff asserts Defendants misrepresented the pool's depth and contractual inclusions when the pool's depth measured 30 inches and not 36 inches as agreed upon in the contract.[7] Plaintiff states this oversight required a change order to 52-inch walls for the pool's intended use as a lap pool.[8] Plaintiff asserts Defendants unilaterally made unapproved changes to the scope of work, including a 67-inch retaining wall and concrete patio area connecting the pool to the foundation of Plaintiff's house, without providing Plaintiff copies of the change orders.[9]

---

[1] Plaintiff's Exhibits 1-5, beginning with P.
[2] Defendant's Exhibits 1-5.
[3] Complaint.
[4] Complaint ¶ 3.
[5] *Id.*
[6] Complaint ¶ 4.
[7] Complaint ¶ 5.
[8] *Id.*
[9] Complaint ¶¶ 6-7.

Plaintiff contends Defendants failed to provide him with a pool construction site plan and drawing application that complied with Plaintiff's Homeowner Association's Architectural Review Board ("ARB").[10] Plaintiff contends Defendants failed to provide addendums to their application documents to the ARB with unilateral change orders including description and costs even though Plaintiff asked for them.[11] Plaintiff alleges Defendants told him their Sussex County construction application for backyard design did not meet the requirement for a 50-foot set back from the A7 Flood Zone.[12] Plaintiff asserts he learned Sussex County maintains no such restriction and Defendants never submitted a backyard pool installation application to Sussex County.[13] Plaintiff asserts Defendants failed to provide Sussex County with the site elevation certificate required for the backyard installation during the permit application process and refused to pay the $3,000 contractor bond specified in the ARB application – a prerequisite to the application's submission.[14]

Plaintiff asserts he spent $11,602 to clear his backyard as part of site preparation and Defendants' insisted on installing the pool in a location that is non-compliant with Plaintiff's ARB construction requirement – an issue that essentially eliminated the possibility of the pool being built.[15] Plaintiff seeks a refund of his $18,060 deposit, $11,602 reimbursement for tree removal, $352 for CPI on the deposit, $25,000 for reforestation of denuded backyard (estimates pending) all of which totals $57,208.[16]

---

[10] Complaint ¶ 8.
[11] Complaint ¶ 9.
[12] Complaint ¶ 10.
[13] *Id.*
[14] Complaint ¶¶ 11 and 13.
[15] Complaint ¶¶ 12 and 14.
[16] Complaint ¶¶ 16-17.

On April 14, 2023, Defendants filed a Motion to Dismiss[17] the Complaint asserting Henderson nor James are parties to the contract with Plaintiff.[18] Rather, Defendants assert Plaintiff entered into a contract with Pools and Spas Unlimited of Milford, Inc.[19] Defendants assert, despite naming them personally, the Complaint does not allege Defendants acted in their personal capacity.[20] Defendants' roles as owner and employee for Pools and Spas Unlimited of Milford, Inc. does not give rise to liability for breach of contract.[21] Defendants assert corporate representatives cannot be held liable for a breach of contract without piercing the corporate veil, and Plaintiff never alleges Defendants were parties to the contract as evidence by the contract itself.[22] Defendants also seek this Court dismiss the Complaint for failure to state a claim.[23]

Plaintiff filed a response to Defendants' Motion to Dismiss and an Amended Complaint.[24] Plaintiff amended the Complaint to designate Milford Pools and Spas Unlimited, Inc. as the party who breached the contract and which he seeks monetary damages; likewise, he removed both Henderson and James as defendants.[25] On July 21, 2023, counsel for Henderson and Pools and Spas Unlimited of Milford, Inc. filed a letter stating there was no objection to Plaintiff amending

---

[17] Ct. Com. Pl. Civ. R. 12(b)(6) Failure to State a Claim.
[18] Defendants' Motion to Dismiss ¶ 1 (Exhibit A).
[19] *Id.*
[20] Defendants' Motion to Dismiss ¶ 3.
[21] Defendants' Motion to Dismiss ¶ ¶ 6 and 8.
[22] Defendants' Motion to Dismiss ¶¶ 9-10.
[23] Defendants' Motion to Dismiss ¶ 10.
[24] "A party may amend a party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, a party may so amend it any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Ct. Com. Pl. Civ. R. 15(a).
[25] Plaintiff's Amended Complaint page 1.

his Complaint.[26] On July 26, 2023, this honorable Court after receiving Defendants' letter granted Plaintiff's Motion to Amend his Complaint.

On August 25, 2023, Defendant filed an Answer to the Amended Complaint. Defendant denies it failed to provide Plaintiff with a fully executed copy of the pool construction contract, Defendant misrepresented the pool's depth and contractual inclusions, Defendant unilaterally made unapproved changes, and Defendant failed to provide Plaintiff with any changes and costs.[27] Defendant denies it failed to provide a site plan to Plaintiff and asserts Plaintiff never communicated his Homeowner Association's ARB requirements.[28] Defendant denies it never applied for a Sussex County construction application nor failed to give Plaintiff any documents he requested.[29] Defendant asserts the following defenses: failure to state a claim upon which relief can be granted, Plaintiff failed to mitigate damages, Plaintiff breached the contract when he cancelled the project after Defendant ordered and paid for the materials thereby making Plaintiff liable, Defendant performed within the requirements of the contract, and the deposit was non-refundable under the contract.

On October 18, 2023, Defendant filed a Counterclaim against Plaintiff.[30] Defendant asserts it entered into a contract with Plaintiff to furnish and construct a vinyl liner pool at Plaintiff's property.[31] Defendant obtained a Sussex County Building permit, then proceeded to order a custom

---

[26] Defense Counsel Letter.
[27] Defendant's Answer ¶¶ 4-7.
[28] Defendant's Answer ¶ 8.
[29] Defendant's Answer ¶¶ 9-10.
[30] A pleading shall state as a counterclaim any claim which at the time of serving the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction. Ct. Com. Pl. Civ. R. 13(a).
[31] Defendant's Counterclaim ¶ 1.

vinyl pool basin, pool liner, and cover for Plaintiff.[32] Defendant expended more than $20,237 in reliance of the contract, and the Sussex County permit, with Plaintiff and still possesses the vinyl pool.[33] Defendant asserts it complied with its contractual obligations and made reasonable efforts to accommodate Plaintiff and his concerns regarding the location and cost of the pool.[34] Defendant asserts Plaintiff's express refusal to comply with the terms under the contract and rejection of Defendant's plan to construct the pool in conformance with the plans and specification is a repudiation and/or breach of the parties' contract.[35] Defendant expended $20,237 and is unable to resell the custom pool, liner, and cover, so – with Plaintiff's deposit – it is entitled to $2,177.[36] Defendant seeks judgment in its favor against Plaintiff for $2,177 plus interest, attorney's fees and costs.

On November 9, 2023, Plaintiff filed a response to Defendant's Counterclaim. Plaintiff asserts Defendant refused or failed to proceed with the project after Plaintiff secured an approval from Sussex County for a backyard installation as planned and designed.[37] Plaintiff contends the pool must be within the backyard pursuant to ARB requirements thereby making the side-yard positioning mandated by Defendant impossible to build. [38] On April 15, 2024, Plaintiff filed a Motion to Dismiss Defendant's Counterclaim. Plaintiff asserts the Counterclaim filed by Defendant is not based on fact and is without merit.[39] Plaintiff asserts similar arguments as he did in his Answer to the Counterclaim.

---

[32] Defendant's Counterclaim ¶ 2.
[33] *Id.* (Exhibit B).
[34] Defendant's Counterclaim ¶ 4.
[35] Defendant's Counterclaim ¶ 5.
[36] Defendant's Counterclaim ¶ 6.
[37] Plaintiff's Response to Counterclaim ¶ 1.
[38] Plaintiff's Response to Counterclaim ¶ 2.
[39] Plaintiff's Motion to Dismiss Defendant's Counterclaim ¶ 1.

On April 28, 2024, Defendant filed a response to Plaintiff's Motion to Dismiss the Counterclaim. Defendant asserts under the standard of review, every factual inference is drawn in the non-moving party's favor, Defendant could conceivably recover under its Counterclaim.[40] In addition, Defendant asserts Plaintiff submitted information outside the initial pleadings,[41] Defendant contends this converts Plaintiff's motion to a Motion for Summary Judgment.[42] Defendant asserts that under this standard of review, Plaintiff must prove there are no genuine issues as to any material fact and that Plaintiff is entitled to judgment as a matter of law.[43] Defendant contends Plaintiff has not met the high burden for entry of judgment as a matter of law.[44] On April 30, 2024, the Court held a pre-trial conference where the Court heard arguments from each of the parties regarding Plaintiff's Motion to Dismiss Defendant's Counterclaim. The Court dismissed Defendant's Counterclaim due to Defendant's failure to request permission from the Court to Amend its Answer to include the Counterclaim thereby rendering Plaintiff's Motion to Dismiss moot.[45]

On September 18, 2024, and November 18, 2024, respectively, Plaintiff filed a Motion to Compel asserting Defendant failed to provide a response to his discovery requests, specifically his twenty-nine interrogatories and thirty-one requests for production. The Court held it would hold Plaintiff's Motions to Compel until the trial. On November 15, 2024, Defendant filed a Motion for Partial Summary Judgment. On November 15, 2024, the Court denied Defendant's Motion for

---

[40] Defendant's Response to Plaintiff's Motion to Dismiss Counterclaim ¶ 2.
[41] Defendant's response to Plaintiff's Motion to Dismiss Counterclaim ¶ 3.
[42] Defendant's response to Plaintiff's Motion to Dismiss Counterclaim ¶ 4.
[43] *Id.*
[44] *Id.*
[45] "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may be leave of the Court set up the counterclaim by amendment." Ct. Com. Pl. Civ. R. 13(f).

Partial Summary as untimely due to its filing days before trial. On November 18, 2024, the Court held a trial and reserved its decision.

## FACTS

On June 4, 2021, Plaintiff and Defendant executed a contract for a vinyl liner pool to be installed at Plaintiff's residence located at 104 Marsh Ridge Court, Rehoboth Beach, DE.[46] The contract detailed the size and dimensions as 24' x 40'3' – 6'6" deep.[47] Under "Payment," the contract states, "Per Delaware Code customer has 3 business days to cancel this contract and receive their deposit back."[48] "After 3 days all deposits paid are non-refundable."[49] The complete price of the pool was $60,200 with 30% or $18,060 due at the time of the contract.[50] Plaintiff paid Defendant the deposit upon execution of the contract.[51] Under "Terms and Conditions," Plaintiff initialed all ten, including "[i]t is agreed that all disputes that arise in connection with our engagement that cannot be mutually resolved by us shall be binding arbitration under the rules and procedures of the American Arbitration Association."[52]

Under the Glad Property Owners' Association ("POA") rules, the Architectural Review Board ("ARB") must approve any additions or improvements to Glade Residences – where Plaintiff's residence is located.[53] The completed applications, including three sets of plans and specifications, must be received seven days prior to the meeting of the ARB.[54] The ARB site design guidelines require "swimming pools shall be located in the rear yard within the building

---

[46] Defendant's Exhibit No. 1, p. 1.
[47] *Id.*
[48] Defendant's Exhibit No. 1, p. 4.
[49] *Id.*
[50] *Id.*
[51] Complaint ¶ 3.
[52] Defendant's Exhibit No. 1, p 5.
[53] Plaintiff's Exhibit No. 2, P-117.
[54] *Id.*

restrictions as applicable to each lot."[55] "These elements shall be landscaped, with evergreen planting of adequate height and density, to screen the activity of the pool from the vision of the neighbors.[56] The ARB design requirements state "swimming pools, pool decks, tennis court fencing, screen enclosures, patio and terrace slabs may not extend to the minimum yard setback area."[57] The ARB construction/completion requirements state "Contractors are required to comply with all guidelines established by the POA as all construction must be conducted with minimum impact on the residents.[58] On October 26, 2021, Bob James signed a copy of these conditions.[59]

On October 21, 2021, Bob James sent an email to Plaintiff with a picture of his house attached, informing Plaintiff the Sussex County permit office determined his backyard is in a flood zone and Plaintiff would need an elevation survey to put the pool in that area or put the pool in the right-side yard that is outside the flood area.[60] On October 26, 2021, Bob James sent an email to Plaintiff providing a drawing of the site plan for Plaintiff's property for the POA/ARB application.[61] Later that day, Plaintiff responded to Bob James stating the POA/ARB will not approve based on what they have so far as they will require conformity with setback requirements as defined in the rules.[62] Plaintiff suggested he blow up the survey so the POA/ARB can view the details as the actual placement distances must be show on all four sides: from the house, the front, the rear flood zone and side property line.[63] Plaintiff informed Bob James the POA/ARB requires a $3,000 damage security bond from all independent contractors and also actual specifics on the

---

[55] *Id* at P-122.
[56] Plaintiff's Exhibit No. 2, P-122.
[57] *Id.* at P-125.
[58] *Id.* at P-127.
[59] Plaintiff's Exhibit No. 1, P-84.
[60] Defendant's Exhibit No. 4.
[61] Plaintiff's Exhibit No. 5, P-81.
[62] *Id.*
[63] *Id.*

retaining wall including materials, finishing, dimensions, and placement – the POA will require a contract for the retaining wall.[64] The POA/ARB regulations state the "$3,000 security deposit is to ensure that no damage will occur to the community property and that the POA/ARB does not incur any expense due to Owners, Contractors, Subcontractors not complying with submitted plans or violating responsible construction practices and community covenants, restrictions, and guidelines."[65] Plaintiff failed to execute a contract with Defendant for a retaining wall and it was not part of the original contract.

Bob James immediately responded to Plaintiff providing another drawing, and informed Plaintiff the wall was a poured concrete solid retaining wall done by their crew and is 67" long below ground (not raised).[66] He informed Plaintiff if there is a bond the homeowner will need to post it, Defendant would not post it and, in their experience, the homeowner posts it, and receives it back when the project is done.[67] On November 2, 2021, Sussex County issued a permit for Plaintiff's swimming pool installation with one year to complete the project.[68] The permit provides a front setback of 30.00/3.5' fence, rear setback 6.00/line fence, and a side setback 10.00/line fence.[69] The permit provides a project description as 24x40 in-ground swimming pool, 300 LF fence, and 1000 square foot concrete.[70] The permit details that if the lot was created after 7/2/91, there is a 50' buffer from the tidal wetlands and the proposed location is away from the flood.[71] The permit requires in-ground pools to have a minimum 4' tall fence around the perimeter of the

---

[64] *Id.*
[65] Plaintiff's Exhibit No. 2, P-117.
[66] Plaintiff's Exhibit No. 5, P-81.
[67] *Id.*
[68] Defendant's Exhibit No. 5.
[69] *Id.*
[70] *Id.*
[71] *Id.*

10

pool and a minimum 3' walkway between the pool and fence, and the gate must be locked at all times when not in use.[72]

On November 8, 2021, Plaintiff emailed Bob James stating there had been a few developments which require his pool install to be pushed back to late March 2022 or early April 2022.[73] Plaintiff states he has two surgeries scheduled for December, his home equity lender wants Plaintiff to pay off his car to get approval for the ARB bond, pool balance, pool fence, sprinkler system modifications, landscaping and transplanting, and Plaintiff can meet Defendant's repayment requirements by March 2022.[74] On that same day, Bob James responded to Plaintiff he would inform Mandi and make the change.[75] On March 20, 2022, Mandi Hughes sent an email to Plaintiff to reach out about the swimming pool installation now that the weather was warmer.[76] She informed Plaintiff his pool installation was currently scheduled for April 25, 2022, and someone would need to be home in the morning of the first day to go over the layout with the crew, which could take one to two hours.[77] Defendant kept the pool, the liner, and the cover in its warehouse after it was ordered when the parties executed the contract.

On April 18, 2022, Plaintiff responded to Mandi Hughes stating Defendant should have made him aware of the County's requirement for a 50' wetland buffer and Bob Hughes' revision of the site plan by moving the pool upland.[78] Plaintiff explained he had spent nearly $3,000 to remove several large oak trees which were in the planned construction area.[79] Plaintiff listed

---

[72] *Id.*
[73] Plaintiff's Exhibit No. 4, P-103.
[74] *Id.*
[75] *Id.*
[76] Defendant's Exhibit No. 2.
[77] *Id.*
[78] Defendant's Exhibit No. 3.
[79] *Id.*

11

multiple reasons why the new location would not work for his personal preferences and asked for an immediate refund of his $18,060 deposit.[80] Plaintiff explained Defendant should have no problem selling the pool to a new buy as it is their most popular model.[81] Defendant failed to find a buyer for the pool after it had been sitting in its warehouse for close to two years. On April 20, 2022, Bob James responded to Plaintiff and informed him it was too late to cancel the pool, liner, and permit.[82] Defendant informed Plaintiff any sale of the pool, liner, and cover would require Plaintiff's deposit to be deducted, however, they had removed Plaintiff from the schedule.[83] On that same day, Plaintiff responded the location was far from perfect, and it was not in compliance with the Glade's POA/ARB requirement and the State's buffer zone.[84] On April 21, 2022, Bob James responded to Plaintiff asking who had turned him down as they do not see where Plaintiff ever got his POA/ARB information.[85] Bob James explained he was lost because the pool only needed to be moved 8 feet up the hill, there was a plan in place, and it was not possible to refund Plaintiff's deposit one week before the start of the dig.[86]

On April 28, 2022, Plaintiff sent Defendant an email stating the current ARB chair approved construction and stated the side setback is 15' with no exception for concrete and the rear setback is 30' from the 404 line.[87] Plaintiff provided no documentation of the POA/ARB approval. Plaintiff explained Sussex County informed him the limitations do not apply to his property as it was surveyed in 1987.[88] Plaintiff provided no documentation of this variance.

---

[80] *Id.*
[81] Defendant's Exhibit No. 3.
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] Plaintiff's Exhibit No. 3, P-110.
[88] *Id.*

Plaintiff's contract with Defendant contains no specifications from the POA/ARB. Plaintiff never communicated any POA/ARB requirements or that their site plan had not been approved to Defendant until it was close to the time to start the dig. The Sussex County permit does not contain any location with specificity. Sussex County granted the permit for the in-ground swimming pool on Plaintiff's property. On or about September 2022, Plaintiff sent Defendant a certified letter requesting a refund of his deposit.

## STANDARD OF REVIEW

The Court is the trier of facts and has the sole discretion to determine the credibility of the witnesses and any evidence provided.[89] If there is conflicting evidence presented at trial, the Court has to reconcile these conflicts – if reasonably possible – to find congruity.[90] However, if the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[91] Any portion of the testimony which the Court finds unsuitable for consideration must be disregarded.[92] The Court considers "the witnesses' demeanor, or the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case."[93]

## DISCUSSION

The Court addressed Plaintiff's Motion to Compel filed September 18, 2024, and heard argument from the parties prior to the trial. Defendant provided discovery on October 3, 2024, and re-filed a certificate of service on November 15, 2024, noting the responses were duplicative. Defendant argued all materials were supplied in response to Plaintiff's interrogatories and request

---

[89] *Leep v. Weline*, 2018 WL 301089 at *5 (Del. Com. Pl. Jan. 3, 2018).
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*

13

for production of documents. The Court denied Plaintiff's Motion to Compel as full discovery was provided by Defendant.

This matter stems from a contract dispute between the parties. Plaintiff bears the burden of proving Defendant breached the terms of the contract. Under a breach of contract claim, Plaintiff must prove by preponderance of the evidence that (1) the parties formed a contract, (2) what the terms of that contract were, (3) Defendant breached the contract, and (4) Plaintiff suffered monetary damages because of Defendant's breach.[94]

As to the first element, a contract is a legally enforceable agreement typically formed by mutual assent and consideration provided there are no viable defenses.[95] While Plaintiff alleges he was never given a copy of a fully-executed contract, there is no dispute the parties executed a written contract on June 4, 2021 signed by both parties along with a deposit paid by Plaintiff to Defendant. The Court finds Plaintiff has met this part of his burden.

In this case, the parties dispute as to the terms of the contract falls into two categories: (1) the placement of the pool and the requirements by the POA/ARB and the County for its location on Plaintiff's property; and (2) Plaintiff's failure to understand his responsibilities versus Defendant's responsibilities. When interpreting a contract, a court must first look at the express terms of the agreement. The Court holds the contract only requires Defendant to install a vinyl liner pool on Plaintiff's property. The contact contains no mention of a specific location Defendant will install the pool on the property, requirements of the POA/ARB that must be approved prior to the installation of the property, or any bond or monies to be paid by Defendant to the POA/ARB.

---

[94] *Freeman v. Scott*, 2017 WL 2633487 at *4 (Del. Com. Pl. Jun 19, 2017).
[95] *Osborn ex. Rel. Osborn v. Kemp*, 991 A.2d 1153, 1158-59 (Del. 2010).

Plaintiff failed to communicate any requirements from the POA/ARB for an in-ground pool on his property to Defendant. Plaintiff provided no documentation to Defendant concerning its site plan not being approved by the POA/ARB until well after the execution of the contract. Similarly, the Court finds the Sussex County permit for the installation of the in-ground pool on Plaintiff's property contains no mention of a specific location where Defendant must place the pool. The permit provides that there must be a buffer from the tidal wetlands. Defendant communicated this to Plaintiff and advised that Plaintiff would need an elevation study. The Court finds the contract specifically states a full refund could only be made within three days of the execution of the contract due to this being a custom pool.

The Court finds Plaintiff attempts to shift the burden of zoning requirement compliance from himself on to Defendant. Plaintiff resides in a community where the POA/ARB has strict guidelines for in-ground swimming pools and a county that has guidelines as well. In his zeal to purchase the pool and contract with Defendant to install it, Plaintiff failed to properly apply and receive approval from his POA/ARB including the $3,000 bond to ensure no damage occurs to community property from residents, contractors, or subcontractors. Plaintiff wanted the pool to be installed in a certain location and Defendant offered options based on the requirements, once communicated by Plaintiff. However, Plaintiff provided neither documentation of approval from his POA/ARB nor documentation he received a variance from Sussex County. In addition, Plaintiff suffered financial issues and failed to plan for all the costs that come with an in-ground pool including fencing, landscaping, and walkways.

As to whether Defendant breached the contract, the law measures the third element by substantial performance.[96] If a party does not substantially perform, then it does not perform the essential purpose of the contract thereby materially breaching the contract.[97] To determine if the breach is material, a court analyzes several factors including the extent of performance, hardship, and whether the breach was intentional.[98]

The Court holds Plaintiff fails to prove Defendant breached the contract's terms. Plaintiff executed a written contract with Defendant to install an in-ground pool. Defendant ordered the custom pool once the parties executed the contract. Defendant obtained a building permit from Sussex County, with an expiration within one year, once they were ready for the installation for the in-ground pool. Plaintiff pushed back the date from Fall 2021 to March/April 2022 for various personal reasons. Defendant contacted Plaintiff on March 1, 2022, informing him the installation had been scheduled. Defendant suspended the installation after Plaintiff communicated his displeasure and demanded a refund of his deposit. Pursuant to the contract, however, Plaintiff must cancel within three days of the execution of the contract. In addition, Plaintiff refused to mitigate any damages by allowing Defendant to deduct his deposit from a subsequent sale of the custom pool – which Defendant was unable to complete. Plaintiff fails to provide any documentation Defendant breached their contract due to noncompliance with POA/ARB requirements or Sussex County permit requirements. The Court holds as there is no breach by the Defendant, so it need not conduct an analysis on damages.

---

[96] *Clean Harbors, Inc. v. Union Pacific Corp.*, 2017 WL 5606953 at *4 (Del. Super. Nov. 15, 2017).

[97] *Id.* at 4.

[98] *Qualcomm Inc. v. Texas Instruments Inc.*, 875 A.2d 626, 628 (Del 2005).

## CONCLUSION

For the reasons discussed above, this Court holds Plaintiff failed to meet his burden Defendant breached their contract for the installation of the in-ground pool and therefore no damages will be awarded to Plaintiff.

**IT IS SO ORDERED** this 27th day of February 2025.

_Rae M. Mims_

The Honorable Rae M. Mims
Judge